**JUDGE KARAS**

**11 CIV 7479**

**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MARGARITTE JEAN-FRANCOIS,

                Plaintiff

-Against-                        COMPLAINT
                                              JURY TRIAL DEMANDED

REGENERON PHARMACEUTICALS, INC.
                Defendant

-----------------------------------------------------------------X

Plaintiff, MARGARITTE JEAN-FRANCOIS, by her attorneys, LAW OFFICES OF AMBROSE WOTORSON, alleges as follows:

I. **INTRODUCTION**

1. This is an action to vindicate the civil rights of Plaintiff. Plaintiff contends that Defendant altered the terms, conditions, and privileges of Plaintiff's employment because Plaintiff is a woman, because Plaintiff is black, and because Plaintiff opposed such discrimination.

II. **JURISDICTION**

2. This Court has jurisdiction over this action under 42 U.S.C. Section 1981 and Section 296 of the New York State Human Rights Law. Venue is proper, as the operative events occurred within this judicial district.

1

III. **PARTIES**

3. MARGARITTE JEAN-FRANCOIS (hereinafter, "Plaintiff") hereby brings this complaint on her own behalf. At all relevant times, Plaintiff was employed with REGENERON PHARMACEUTICALS, INC. as a Clinical Trials Manager.

4. REGENERON PHARMACEUTICALS, INC., (hereinafter, "Defendant") is a private corporation, located at 745 Saw Mill River Parkway, Tarrytown, New York. It may sue and be sued. At all relevant times, REGENERON PHARMACEUTICALS, INC., employed Plaintiff. It is being sued for having violated Plaintiff's civil rights.

IV. **FACTUAL AVERMENTS**

5. Plaintiff's performance has been satisfactory at all relevant times since her employment began with Defendant on or about July 9, 2009 as a Clinical Trials Manager

6. However, the terms, conditions, and privileges of Plaintiff's employment have been adversely affected in the following ways:

   a. On or about, July 9, 2009, defendant, a biopharmaceutical company, hired Plaintiff as a Clinical Trial Manager.

   b. Plaintiff was given a salary of $94,000.

   c. Upon information and belief, the industry average for a clinical trial manager is over $110,000 and up to $165,000 for a Sr. Manager.

   d. Shortly after being hired, plaintiff spoke to defendant's Human Resources department and complained about being paid below the industry standards.

e. Plaintiff was reasonably attempting to oppose what she reasonably viewed as discriminatory treatment. Indeed, at the time of her hire, Plaintiff was the only black CTM employed with defendant, and defendant's other CTMs, none of whom were black, had been hired with higher salaries which were in the range of the industry average.

f. On or about January 1, 2010, the Human Resources department acknowledged plaintiff's complaint regarding her salary being below industry standards and being below that of her fellow CTMS, none of whom were black.

g. On January 7, 2010, plaintiff again complained, but this time directly to a Vice President of Human Resources, about her being paid below the industry standard. The VP acknowledges plaintiff's complaint, and promised to get the issue resolved.

h. On February 9, 2010, Plaintiff provided the HR Department with a salary survey of the industry standard pay and requested a pay increase to $104,000. Plaintiff also reasonably complained, at that time, that she was not being treated fairly, in part, because of her protected class status. In March 2010, HR acknowledges plaintiff salary being below industry standards and compensated her with a $1,500 American Express check and a promise of promotion in December 2010. Defendant's promise to promote plaintiff in December was based upon the fact that, defendant's budget was reviewed only once a year, and promotions and salary adjustment are made only in December of each year.

i. As a consequence of her complaints, plaintiff was subjected, in a pervasive manner, to unnecessarily tense, argumentative and hostile transactions with her supervisors as exhibited in emails, unduly harsh decisions and refusals to promote her.

j.      On December 6, 2010, plaintiff formally expressed an intention to apply for the Senior Clinical Trial Manager position, after another employee departed, and formally noted that she still had not been promoted to Senior Manager, as promised.

k.      Plaintiff, despite her superior qualifications, was not promoted. Indeed the position was given to a less-qualified white female. The qualification required for an Associate Director Position at defendants establishments are: BS/BA (advanced degree preferred); 10+ years industry experience, 5 years in clinical development and in drug development; ability to mentor, develop people.   Plaintiff met all these requirements and the eventual selectee did not, yet plaintiff was still denied promotion to Sr. Manager.

l.      On April 18, 2011, plaintiff formally complained to Ms. Serrant her direct supervisor that she was being subjected to a hostile work environment in that complaint; plaintiff reasonably requested that she be placed on another team. This was the 3rd request plaintiff made to be placed on another team. That request was denied without explanation.

m.      On April 18, 2011, plaintiff also complained, to defendant about her alleged mistreatment due her protected activities and her protected status. Defendant failed to investigate her complaint.

n.      On June 24, 2011, plaintiff informed defendant of her desire to be assigned to a critical project. However, defendant declined to assign plaintiff, without explanation, and instead assigned it to a newly hired contractor who had no history with such projects. Plaintiff was asked instead to train and to mentor the contractor.

o.      To date, plaintiff's salary as a Clinical Trial Manager is still well below industry standards and is below defendant's own pay standards.

4

p.   Further, plaintiff still has not been promoted to Senior Manager despite her superior qualifications and good performance, in part, because of her protected status and prior protected activities.

7.   As a proximate result of Defendant's illegal acts towards Plaintiff, Plaintiff will suffer a loss of earnings and other employment benefits.

8.   As a further proximate result of Defendant's illegal actions towards Plaintiff, Plaintiff has suffered impairment and damage to Plaintiff's good name and reputation.

9.   As a further proximate result of Defendant's illegal actions towards Plaintiff, Plaintiff has suffered mental anguish and emotional injury, and has had to treat with a mental healthcare professional.

10.   As a further proximate result of Defendant's illegal an action towards Plaintiff, Plaintiff has been unable to find comparable employment, and as a result, continues to suffer extreme economic losses.

11.   Defendant's illegal actions were willful, outrageous, malicious, and were intended to injure Plaintiff, and done with reckless indifference to Plaintiff's protected rights, entitling Plaintiff to punitive and/or liquidated damages.

V.   **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

12.   Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

13.   Defendant undertook adverse job actions against plaintiff, in part, because of plaintiff's race. Indeed, defendant harbored intentionally discriminatory and retaliatory

animus towards plaintiff because plaintiff is not white and made prior complaints regarding discrimination. Thus, defendant violated 42 U.S.C. Section 1981.

### SECOND CAUSE OF ACTION

14. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

15. Defendant undertook adverse job actions against plaintiff, in part, because of plaintiff's prior complaints opposing discrimination. Indeed, defendant harbored intentionally discriminatory and retaliatory animus towards plaintiff because of plaintiff's protected status and prior complaints relating to discrimination. Thus, defendant violated Section 296 of the New York State Human Rights Law.

### VI. PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court grant judgment containing the following relief:

a. An award of damages to be determined at the time of trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury,

b. An award of punitive damages to be determined at the time of trial as against the individual defendant;

c. An award of reasonable attorney fees and the costs of this action and,

d. Such other and further relief as this Court may deem just and proper; and

e. any other equitable relief available, including an injunction against the adverse actions complained of herein.

Dated: Brooklyn, New York
October 21, 2011

                                                        Respectfully Submitted,
                                                        Law Offices of Ambrose Wotorson

                                                        By_____
                                                        Ambrose W. Wotorson (AWW-2412)
                                                        26 Court Street, Suite 1811
                                                        Brooklyn, New York 11242
                                                        (718) 797-4861